## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DARRYL GRAHAM,

    Plaintiff,

    v.

HONEYWELL INTERNATIONAL, INC.,

    Defendant.

Civil Action No. TDC-21-0310

## MEMORANDUM OPINION

Plaintiff Darryl Graham has filed this civil action against Defendant Honeywell International, Inc. ("Honeywell") alleging retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730 (2018), and failure to pay wages owed to him by Honeywell, in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509 (West 2016). Pending before the Court is Honeywell's Motion to Dismiss, which is fully briefed. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED, and this case is DISMISSED.

## BACKGROUND

Graham worked for Honeywell as a journeyman steamfitter from October 15, 2015 to February 8, 2018. He was a member of Steamfitters Local Union No. 602 of the United Association ("the Union") and was paid at an hourly rate on contractual terms set by the Union's negotiated agreements with the Mechanical Contractors Association of Metropolitan Washington, Inc. and with Honeywell ("the Union Agreements"), including the Supplemental Service

Agreement ("SSA") and the Building Construction Agreement ("BCA").  At the times relevant here, Graham was assigned to perform facility maintenance duties at the United States Food and Drug Administration ("FDA"), Federal Research Center, on the FDA's White Oak Campus in Silver Spring, Maryland, pursuant to a contract between Honeywell and the United States General Services Administration ("GSA") for night shift maintenance at FDA ("the night shift contract"). Specifically, Graham was assigned to work the 12-hour night shift from 6:00 a.m. to 6:00 p.m. on four consecutive days, followed by four consecutive days off, referred to as a "four-on, four-off schedule."  Compl. ¶ 16, ECF No. 1.  Honeywell and GSA had a separate contract for daytime maintenance at FDA ("the day shift contract").  Graham alleges that both contracts between Honeywell and the federal government "relied on the pay rates" set forth in the Union Agreements with Honeywell.  *Id.* ¶ 9.

In the Complaint, Graham outlines two main problems with Honeywell's practices and representations to the federal government.  First, he alleges that under the terms of the Union Agreements, he should have been paid overtime for all hours worked over eight hours per day, but that on January 18, 2016, he was instructed by his Honeywell supervisor, Project Manager Gary Ballenger, to record his time as consisting of 10 straight-time hours and 2 overtime hours for a typical 12-hour day.  Graham asserts that he investigated this practice and that between January 2016 and January 2018, he repeatedly complained about it orally and in writing to Ballenger and his Union Business Representative, Chris Madello, but both told him to continue to record his time in this manner, which he believed was inconsistent with the Union Agreements and therefore inconsistent with the government contracts which allegedly incorporated those agreements.

Second, Graham alleges that between January 2016 and January 2018, he and other workers on the night shift contract were improperly assigned work left unfinished by day shift

2

employees, which was outside the scope of work of the night shift contract, and that his supervisors insisted that he perform the work regardless, even after an October 2017 incident in which a night shift employee was injured while conducting such work. Graham complained orally and in writing about this practice to both Madello and the day shift foreman, Frank Manual, and alleges that Manual and Ballenger repeatedly attempted to fire him as a result. He also requested that any directives that night shift employees perform day shift duties be made in writing, but Manual angrily denied that request.

In December 2017 and January 2018, Graham made additional complaints about these overtime and duty assignment policies, including in a January 5, 2018 email to Madello. On January 26, 2018, Madello responded to Graham by stating that the work schedule of 10 straight-time hours for 4 days per week was permissible under Article X, Section 25 of the SSA because that provision allows for exceptions to the general rule of an eight-hour work day by mutual consent, and Graham had effectively consented by waiting too long to object. Less than two weeks later, Ballenger called Graham at home and attempted to fire him on the grounds that he had allegedly used a washing machine at the FDA worksite without permission. This attempted firing was unsuccessful because the night shift foreman, Eddy Reynolds, had given Graham permission to use the washing machine. However, when Graham arrived at FDA for his next scheduled shift on February 6, 2018, Quinten Mincy, the shop steward, told him that he was being terminated at the request of GSA, and he was escorted off the premises. Madello later sent to Graham a copy of a letter from the GSA Contracting Officer to Honeywell requesting that Graham be removed for having used the washing machine.

Graham filed his Complaint in the present case on February 5, 2021. In the Complaint, Graham alleges in Count 1 that his termination following internal complaints about Honeywell's

3

overtime and duty assignment practices constituted unlawful retaliation in violation of the FCA. Specifically, he contends that Ballenger requested the letter from the GSA Contracting Officer to create a pretext for his retaliatory termination by Honeywell. Graham alleges in Count 2 that Honeywell's failure to pay him at the overtime rate for work in excess of eight hours per day, which he claims was required under the Union Agreements, amounted to a knowing and willful violation of the MWPCL.

## DISCUSSION

In its Motion, Honeywell seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on several grounds. First, it argues that Graham has failed to state a valid FCA retaliation claim because he has not pleaded sufficient facts to show that he engaged in protected activity, that Honeywell knew about that activity, and that his termination was sufficiently connected to this activity. Second, it argues that Graham's MWPCL claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2018), that it is therefore subject to and barred by the statute of limitations applicable to LMRA claims, and that in any event the MWPCL does not provide a basis for relief for his claim that he is entitled to unpaid overtime.

## I.      Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994);

4

*Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).  In considering a Rule 12(b)(6) motion, courts may consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).  Because the Complaint references the Union Agreements, the Court may consider those Union Agreements attached to the Motion, including the SSA and the BCA, which are of undisputed authenticity.

## II.   False Claims Act

In Count 1, Graham alleges that Honeywell violated the False Claims Act by retaliating against him after he made internal complaints about the failure to pay overtime for certain hours and about the assignment of certain tasks to night shift workers that was supposed to be performed by day shift workers, both of which he believed to be violations of the Union Agreements and, by extension, Honeywell's contracts with the federal government ("the Government").  Honeywell's primary argument for dismissal of this claim is that Graham's complaints on these issues did not constitute protected activity under the FCA.

The FCA imposes civil liability for submitting false claims to the United States government, including against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1).  A "claim" includes "any request or demand, whether under a contract or otherwise, for money or property" that "is presented to an officer, employee, or agent of the United States." *Id.* § 3729(b)(2).  The FCA's provision barring retaliation states that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To state a plausible FCA retaliation claim under § 3730(h), a plaintiff must allege facts sufficient to support a reasonable inference that: (1) the plaintiff engaged in protected activity; (2) the plaintiff's employer knew about the protected activity; and (3) the employer took adverse action against the plaintiff as a result. *See United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018).

As reflected in the statutory language, the FCA recognizes two types of protected activity: (1) acts "in furtherance of" an FCA action; and (2) "other efforts to stop" one or more FCA violations. *See id*; 31 U.S.C. § 3730(h)(1). Neither form of protected activity necessarily requires the existence of a substantive FCA claim, as "retaliation can occur while employees are investigating or collecting information about a possible fraud, before they have put all the pieces of the puzzle together." *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013). Nevertheless, the first prong, taking acts in furtherance of an FCA action, requires that the protected activity occurred when there was "a distinct possibility" of litigation under the FCA, or that there was conduct that "reasonably could lead to a viable FCA action," as determined from the "perspective of the facts known by the employee at the time of the protected conduct." *United States ex rel. Grant*, 912 F.3d at 200-01 (quoting *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010)). Thus, to establish such protected activity, Graham would have to show that the practices he complained about—the recording of 10 hours of straight time each day and the orders

to night shift employees to conduct work that was supposed to be conducted by day shift employees—reasonably could form the basis of a viable FCA claim.

The second prong, making "other efforts to stop" an FCA violation, requires facts sufficient to support the inference that a plaintiff's actions were "motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA." *Id.* at 201. Thus, for Graham to allege plausibly that he engaged in protected activity under the second prong, he must advance facts that support a reasonable inference that he believed Honeywell was violating the FCA, that this belief was reasonable, that he registered his complaints based on that belief, and that his complaints "were designed to stop one or more violations of the FCA." *Id.* at 201-02.

Graham fails to plead facts sufficient to support a plausible claim for relief based on either form of protected activity. Although Graham contends that he believed that Honeywell's overtime and scope-of-work policies resulted in the submission of false or fraudulent claims for payment to the Government, the facts alleged do not support an inference that such a belief was reasonable. First, Graham does not claim that at the time of his internal complaints, he had any specific knowledge of the contents of the relevant contract or that he had any visibility into billing practices between Honeywell and the Government, including whether or how either the recorded overtime hours or the performance of day shift work by night shift workers translated into actual claims for payment submitted by Honeywell to the Government. Graham did not know, and has alleged no facts to show, that the specific amounts billed to the Government were actually tied to the specific overtime costs or the time spent by night shift workers on specific tasks, as opposed to being based on a firm fixed-price contract or another contractual arrangement independent of the practices in question.

Second, the allegations do not support the conclusion that either practice that allegedly violated Honeywell's contracts with the Government would result in false claims that could form the basis of an FCA claim.  As to the practice relating to recording overtime hours, even if the allegations in the Complaint could be deemed sufficient to show that Honeywell's contracts with the Government actually incorporated the overtime arrangements set forth in the Union Agreements and that the system of recording 10 hours of overtime for each 12-hour day would both violate those terms and result in bills that were inconsistent with the terms of the contracts, any alleged misrepresentations on the number of hours eligible for overtime pay could not support an FCA claim because they would not result in any loss to the Government.  Under the FCA, a false statement or misrepresentation in a claim submitted to the Government may only form the basis of an FCA claim if it was "material to the Government's payment decision." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016); *see United States v. Triple Canopy, Inc.*, 857 F.3d 174, 177 (4th Cir. 2017) (stating that the FCA is "cabined by [a] rigorous materiality requirement").  "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment," or because the Government "would have the option to decline to pay if it knew of the defendant's noncompliance." *Universal Health Servs., Inc.*, 136 S. Ct. at 2003.  Rather, a misrepresentation is "material" if it "has a 'natural tendency' to influence the government's decision to pay for the contracted service." *Glynn*, 710 F.3d at 217 (quoting 31 U.S.C. § 3729(a)(1)(G); *see Triple Canopy*, 857 F.3d at 178) (stating that a misrepresentation is material under the FCA if it is "capable of influencing the Government's decision to pay").

Consistent with the materiality requirement, the United States Court of Appeals for the Fourth Circuit has found that the submission of claims that under bill the Government would not

constitute a violation of the FCA. *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 173-74 (4th Cir. 2016). In *Carlson*, the court found that a whistleblower did not have an objectively reasonable belief that a practice resulting in failing to charge the Government certain overhead expenses violated the FCA because the alleged false claims resulted in "under billing the government on existing contracts," and there was "no mechanism by which" the identified practice "could later result in the government being fraudulently over billed." *Id.* at 173; *see also United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968) (noting that the FCA "was intended to reach all types of fraud . . . that might result in financial loss to the Government").

Likewise, Honeywell's practice of instructing employees to record overtime after 10 rather than 8 hours of work per day would necessarily decrease the cost of labor provided to the Government and, if bills were submitted based on the recorded number of overtime hours, would decrease, not increase, the amount owed under the contract by the Government to Honeywell. Thus, although Graham has argued that the existence of any loss to the Government from this practice is an issue of fact not appropriately resolved on a motion to dismiss, based on the allegations in the Complaint, any misrepresentations about recorded overtime hours in submitted bills would cause no loss to the Government, would not impact the Government's decision to pay, and thus would not be material. *See Triple Canopy*, 857 F.3d at 178; *Carlson*, 657 F. App'x at 173. There could be no viable FCA claim based on Honeywell's policy for recording overtime hours.

Similarly, the allegations in the Complaint about the practice of assigning night shift employees like Graham to complete the unfinished tasks of day shift employees in addition to their own duties, even if identifying a practice inconsistent with the terms of the contracts between Honeywell and the Government, do not support the conclusion that the Government would suffer

a financial loss or other detrimental impact that would render material any false statements about who did the work. Graham has not alleged that the night shift workers were paid at a higher hourly rate than the day shift workers, or that they received pay specifically linked to the performance of duties assigned by the contracts to the day shift workers, which would both need to be true in order for the Government to suffer financial harm that would be reflected in bills submitted while this practice was occurring. The False Claims Act is not "a vehicle for punishing garden-variety breaches of contract" that are not material to the Government's decision to pay. *Universal Health Servs., Inc.*, 136 S. Ct. at 2003.

Graham has not otherwise alleged facts sufficient to support a claim of some other harm to the Government that would render material any false statements about who performed the day shift work. In *United States v. Triple Canopy, Inc.*, 857 F.3d 174 (4th Cir. 2017), cited by Graham, the Government alleged that the defendant, a contractor engaged to provide security for Al Asad Airbase in Iraq through guards who had achieved a specific marksmanship qualification, violated the FCA by falsifying certifications of marksmanship and knowingly billing the Government the full contract price for guards who failed to meet the contractually specified marksmanship level. *Id.* at 175-76. The court held that such misrepresentations were material because the Government's decision to pay "would be influenced by knowledge that the guards could not . . . shoot straight." *Id.* at 176. In contrast, Graham offers no allegation that he and the other night shift employees assigned to complete day shift work were underqualified for their duties, or that they provided inferior services in carrying out the additional duties as compared to the day shift workers. Indeed, Graham has asserted that he is a "highly skilled steamfitter and journeyman with 25 years of experience in his field" and "was considered a highly competent steamfitter and diligent and professional Honeywell employee." Compl. ¶¶ 7, 24.

10

Tellingly, nowhere does Graham allege that in his internal complaints, he raised a concern that the Government would suffer a financial loss or receive inferior service as a result of these practices. Rather, his complaints about the policy on recording overtime hours focused on the alleged violation of the Union Agreements and the potential financial loss to him and his co-workers, and his complaints about the requirement that night shift workers perform day shift worker duties consisted mainly of concerns that the day shift workers were supposed to do the work, that a night shift worker had been injured while performing such work, and that the supervisor assigning such work to the night shift workers needed to responsible for the consequences.

Thus, even if Honeywell's overtime and duty assignment policies were inconsistent with the claims for payment submitted to the Government, Graham has failed to allege sufficiently how any false statements in bills presented to the Government were material, as these practices did not have the potential to cause a loss or harm to the Government and therefore would not have influenced the Government's decision whether to pay the claims. *See Glynn*, 710 F.3d at 217. In the absence of such allegations, Graham cannot establish that a viable FCA action was a "distinct possibility" under the first prong, or that his actions were motivated by an "objectively reasonable" belief that the Honeywell was violating or would soon violate the FCA under the second prong. *United States ex rel. Grant*, 912 F.3d at 201-02 (holding that under the second prong, "while the plaintiff's actions need not 'lead to a viable FCA action' as required under the distinct possibility standard, they must still have a nexus to an FCA violation").

The Court thus concludes that the facts alleged are insufficient to support a reasonable inference that Graham was engaged in a protected activity as required for a claim of retaliation under the FCA. The Motion will be granted as to the FCA retaliation claim alleged in Count 1.

11

### III.   MWPCL

In Count 2 of the Complaint, Graham asserts that, as a result of the overtime policy, Honeywell knowingly and willfully failed to pay him owed overtime wages, in violation of the MWPCL. Specifically, Graham alleges that Honeywell's practice of paying at the overtime rate for hours exceeding ten hours of work per a day under the four-on, four-off schedule, violated the MWPCL because Honeywell actually owed overtime on hours above eight hours per day pursuant to the Union Agreements. Honeywell argues that the Union Agreements required payment at the overtime rate only on hours in excess of ten per day under the four-on, four-off schedule. Regardless of which interpretation of the Union Agreements is correct, Honeywell argues that the MWPCL claim must be dismissed because (1) it is preempted by Section 301 of the LMRA; and (2) it is time-barred by the statute of limitations applicable to the LMRA.

Honeywell is correct that the MWPCL claim is preempted by the LMRA. "Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in addressing disputes arising out of labor contracts" such as collective bargaining agreements ("CBAs"). *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 937 (4th Cir. 1991). In furtherance of this federal policy, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted by federal law and must be treated as a claim under Section 301 or dismissed. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). This rule is based on the principle that state law does not provide an independent source of private rights to enforce union agreements. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

Although the mere existence of a labor agreement does not automatically ensure preemption under the LMRA, see *Allis-Chalmers*, 471 U.S. at 220, Graham's overtime claim is

12

substantially dependent upon an interpretation of the Union Agreements. Notably, because Graham does not allege that he was not paid overtime on hours exceeding 40 hours per week, which would implicate federal and state statutory rights, his overtime pay claim is based on his interpretation of the Union Agreements as requiring overtime on hours worked in excess of eight hours per day. As stated in the Complaint, the Union "determined in pertinent agreements the contractual rate and terms of Mr. Graham's compensation per hour of work." Compl. ¶ 7. Specifically, Graham's alleged entitlement to overtime pay on such hours derives from Article X of the SSA, which provides that a standard work day consists of eight consecutive hours. In contrast, Honeywell argues that the policy of paying overtime only on hours exceeding 10 hours per day is justified by multiple provisions in Article XXI of the BCA, including one which states that "[f]our days at 10 hours a day. . . may be worked at straight time with the prior approval of the Employee and the Employer." Reply at 10, ECF No. 24 (quoting ¶ 101 of the BCA). It is therefore apparent that Graham's claim under the MWPCL is substantially dependent on the analysis and interpretation of the Union Agreements. *See Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 107-08 (4th Cir. 2014) (holding that a union member's wage claim against an employer under the South Carolina Wages Act was preempted by the LMRA). Accordingly, Graham's MWPCL claim is preempted.

Though Graham's claim could be treated as a federal claim under Section 301 for a violation of a contract between an employer and a labor organization, 29 U.S.C. § 185, Honeywell argues that such a claim is time-barred based on *Foy v. Giant Food, Inc.*, 298 F.3d 284 (4th Cir. 2002), in which the Fourth Circuit held that an employee's civil action against an employer pursuant to Section 301 of the LMRA for breach of a CBA was subject to the six-month statute of limitations set forth in Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §

160(b). *Foy*, 298 F.3d at 291. *Foy* relied on the United States Supreme Court's ruling in *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151 (1983), in which the Court first applied the NLRA's six-month statute of limitations to an employee's LMRA action in the specific context of a "hybrid § 301/fair representation claim" consisting of "two [intertwined] causes of action," one against the employer for breach of a CBA and the other against the union "for breach of the union's duty of fair representation, which is implied" from the NLRA. *Id.* at 164-65 & n.14, 172. More recently, other courts have seized upon this distinction and rejected the argument that *DelCostello* requires that the six-month limitation period in Section 10(b) of the NLRA applies to a non-hybrid Section 301 action in which an employee files suit against an employer only. *See, e.g., Cephas v. MVM, Inc.*, 520 F.3d 480, 487 (D.C. Cir. 2008) (stating that "[n]othing in the [*DelCostello*] opinion remotely suggests § 10(b) supplies the limitation period for every non-hybrid action an employee brings for the breach of a CBA").

Nevertheless, the Fourth Circuit has taken a categorical approach, holding that under *DelCostello*, "a six-month statute of limitations applies to actions under the [LMRA] brought by an employee against his employer for breach of a collective bargaining agreement" and applying that rule to a case in which, as here, the LMRA claim was brought against only the employer, not the union, and was therefore not a hybrid claim. *Foy,* 298 F.3d at 286, 291. *Foy* is controlling authority. Because Graham first complained of Honeywell's alleged breach of the Union Agreements prior to his termination in 2018, and the breach as applied to him ended with his termination on February 8, 2018, he plainly filed his February 5, 2021 complaint more than six months after the action accrued. Accordingly, any LMRA claim made by Graham against Honeywell is untimely and will be dismissed.

Because the MWCPL claim will be dismissed as preempted and time-barred, the Court need not address Honeywell's additional argument that the MWPCL does not apply to claims that a plaintiff is entitled to overtime wages in general, as opposed to a claim of whether overtime wages were actually paid.  The Court notes, however, that Honeywell's argument was based on case law predating *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621 (Md. 2014), in which the Court of Appeals of Maryland rejected this same argument and held that the MWPCL provides a cause of action for both kinds of overtime claims.  *Id.* at 624-26.

## CONCLUSION

For the foregoing reasons, Honeywell's Motion to Dismiss will be GRANTED.  A separate Order shall issue.

Date:  November 12, 2021

THEODORE D. CHUANG
United States District Judge